FILED

APR 16 2009

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

ORLANDO MCLEAN,

       Plaintiff,

v.                                                        ACTION NO. 2:08cv434

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration,

       Defendant.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Orlando McLean ("McLean"), brought this action under Sections 216(i) and 223 of the Social Security Act, 42 U.S.C. § 405(g), 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act").

This action was referred to the undersigned United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), by order of reference filed December 2, 2008. For the reasons expressed herein, the Court RECOMMENDS that the Commissioner's decision be AFFIRMED and the case be DISMISSED.

### I. PROCEDURAL BACKGROUND

On August 1, 2002, McLean filed an application for SSI and DIB alleging an onset of disability as of March 28, 2002 due to diabetes mellitus, hypertension, acid reflux, and peripheral

neuropathy.  (R.[1] 26, 58.)  McLean's application was denied by the Social Security Administration initially on March 28, 2003 (R. 44), and upon reconsideration on August 12, 2003 (R. 50).  On September 4, 2003, Hart requested a hearing before an Administrative Law Judge ("ALJ") of the Social Security Administration.  (R. 53.) That hearing was held in Norfolk, Virginia, on March 4, 2004.  (R. 302, 352-68.)  McLean was represented by counsel at the hearing. (R. 354.)  An independent vocational expert, Edith Edwards, was present at the hearing but did not testify.  (R. 354.)  On October 27, 2004, the ALJ issued a decision that found that McLean was not disabled within the meaning of the Act because McLean had the residual functional capacity ("RFC") to return to his former work as a telemarketer.  (R. 302-308)

On December 22, 2004, McLean requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council").  (R. 310.)  On February 4, 2005, the Appeals Council remanded the case to the ALJ to further assess McLean's mental capacity.

Pursuant to the remand order, the ALJ held a new hearing in Norfolk, Virginia on August 17, 2005.  (R. 26.)  McLean was represented at the hearing by the same counsel as before, and the same independent vocational expert, Edith Edwards, testified.  (R.

---

[1] "R." refers to the transcript of the administrative record of proceedings relating to this case.

2

369-85.)  On October 28, 2005, the ALJ issued a decision that found that McLean was not disabled within the meaning of the Act because McLean had the RFC to perform sedentary work.  (R. 26-32.)

On December 16, 2005, McLean requested review of the ALJ's decision by the Appeals Council.  (R. 22.)  The Appeals Council denied McLean's request for review on April 20, 2006, stating that it found no reason to review or change the ALJ's decision. (R. 18-20.)  This makes the ALJ's decision the "final decision" of the Commissioner subject to judicial review here, pursuant to 42 U.S.C. § 405(g). 20 C.F.R. § 416.1481.

McLean brought the instant action seeking judicial review of the decision of the Commissioner denying his claims for SSI and DIB.  McLean filed the instant complaint on September 12, 2008, which Defendant answered on November 14, 2008.  McLean filed a motion for summary judgment with a memorandum in support on January 28 2009; McLean filed an amended memorandum in support on February 6, 2009.  Defendant filed a motion for summary judgment and in opposition to McLean's motion for summary judgment with a memorandum in support on March 3, 2009.  The Court received no response from McLean to Defendant's motion for summary judgment. As neither counsel in this case has indicated special circumstances requiring oral argument in this matter, the case is deemed submitted for decision based on the memoranda.

## II.  **FACTUAL BACKGROUND**

McLean is a forty-five year old male, who was thirty-eight at the time of his date of alleged onset of disability and forty-two at the time of the ALJ's October 28, 2005 decision.  (R. 58.) McLean graduated high school, attended college for two years, and has completed training for accounting, paralegal, and medical assistant work.  (R. 89.)  He has past relevant work experience as a stock clerk / janitor, customer service representative, social work aid, accounting clerk, and telemarketer.   (R. 84, 100.) McLean alleges that he became disabled as of March 28, 2002 due to diabetes, hypertension, acid reflux, peripheral neuropathy, and depression.  (R. 58, 83.)

The ALJ found that, at the time of the August 17, 2005 hearing, McLean suffered from depression/anxiety and diabetes mellitus with peripheral neuropathy, which the ALJ found to be severe impairments.  (R. 31.)  The ALJ found that McLean's other impairments were non-severe.   (R. 28.)   The ALJ, however, found that McLean's severe impairments did not meet or exceed one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  (R. 29.)  The ALJ then found that McLean had the RFC to perform sedentary work, and restricted McLean to the performance of simple, repetitive tasks with no more than occasional interaction with peers, supervisors, or the general public.  (R. 30.)  The ALJ found that McLean could not return to his past work as a

4

telemarketer because he was limited to unskilled work.   (R. 30.)
But the ALJ found that there is a significant number of jobs in the
national  economy  that  McLean  could  perform.      (R.  30-31.)
Accordingly, the ALJ found McLean to be not disabled within the
meaning of the Act.   (R. 23.)

### III. STANDARD FOR SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, summary
judgment should be granted only if "there is no genuine issue as to
any material fact and the . . . moving party is entitled to
judgment as a matter of law."   Fed. R. Civ. P. 56(c).   For the
evidence to present a "genuine" issue of material fact, it must be
"such that a reasonable jury could return a verdict for the non-
moving party."   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986).   Facts are deemed material if they might affect the outcome
of the case.   Celotex Corp. v. Catrett, 477 U.S. 317 (1986).   In
other words, the moving party's submission must foreclose the
possibility of the existence of facts from which it would be open
to a jury to make inferences favorable to the non-movant.   Id.

In deciding a summary judgment motion, the Court must view the
record as a whole and in the light most favorable to the non-moving
party.   Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.,
763 F.2d 604, 610 (4th Cir. 1985).   "If, however, 'the evidence is
so one-sided that one party must prevail as a matter of law,' we
must affirm the grant of summary judgment in that party's favor."

5

O'Connor v. Consol. Coin Caterers Corp., 56 F.3d 542, 545 (4th Cir. 1995) (quoting Anderson, 477 U.S. at 251-52). Moreover, summary judgment must be granted where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial," Celotex, 477 U.S. at 322, as the non-moving party is required to "set forth specific facts showing that there is a genuine issue for trial" with respect to that element. Fed. R. Civ. P. 56(e).

When confronted with cross-motions for summary judgment, "the standards upon which the Court evaluates the motions for summary judgment do not change simply because the parties present cross-motions." Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991). "[T]he Court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1997)).

## IV. STANDARD FOR REVIEW OF THE COMMISSIONER'S DETERMINATION

The Commissioner ultimately held that McLean was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is

6

limited to determining whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g); <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam) (superceded in non-relevant part by 20 C.F.R. §§ 404.1517(d)(2), 416.927(d)(2)); <u>Hays v. Sullivan</u>, 907 F.2d 1453 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Hunter</u>, 993 F.2d at 34 (citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. <u>Id.</u> (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner has the duty to make findings of fact and resolve conflicts in the evidence. <u>Hays</u>, 907 F.2d at 1453 (citing <u>King v. Califano</u>, 599 F.2d 597, 599 (4th Cir. 1979)). The Court does not conduct a <u>de novo</u> review of the evidence or of the Commissioner's findings. <u>Schweiker</u>, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996) (citing <u>Hays</u>, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or on the Commissioner's

7

designate, the ALJ)." Craig, 76 F.3d at 589 (quoting Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. Richardson v. Perales, 402 U.S. 389, 401 (1971). The issue before this Court, therefore, is not whether McLean is disabled, but whether the Commissioner's finding that McLean is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See id.; Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987) ("[A] factual finding by an [ALJ] . . . is not binding if it was reached by means of an improper standard or misapplication of law.").

## V. ANALYSIS

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under Title II of the Act as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also 42 U.S.C. § 423(d)(1)(a). To meet this definition, the claimant must have a

---

[2]A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

severe impairment that makes it impossible to do previous work or any other substantial gainful activity[3] that exists in the national economy.  20 C.F.R. §§ 404.1505(a), 416.905(a); see also 42 U.S.C. § 423(d)(2)(A).

## A. Sequential Disability Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth at 20 C.F.R. § 416.920.  See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981).  Under this process, the ALJ must determine in sequence:

(1)   Whether the claimant is engaged in substantial gainful activity (i.e., whether the claimant is working).  If so, the claimant is not disabled and the inquiry is halted.

(2)   Whether the claimant has a severe impairment.  If not, the claimant is not disabled and the inquiry is halted.

(3)   Whether the impairment meets or equals the medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria.  If so, the claimant is disabled and the inquiry is halted.

---

[3] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit.  20 C.F.R. §§ 404.1510, 416.910.

9

(4) Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

(5) Whether the claimant is able to perform any other work considering both his residual functional capacity[4] and his vocational abilities. If so, the claimant is not disabled.

### 1. Steps One Through Three

In this case, the ALJ decided at step five of the analysis that McLean was not disabled. At step one of the analysis, the ALJ determined that McLean had not engaged in substantial gainful activity since his alleged date of onset of disability, March 28, 2002. (R. 27.) At step two, the ALJ determined that McLean's depression with anxiety and diabetes mellitus with peripheral neuropathy are severe impairments. (R. 28.) At step three, the ALJ found that McLean did not have a severe impairment or combination of impairments that meet or medically equal one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (R. 29.)

### 2. RFC Determination

Prior to step four, the ALJ determined McLean's RFC upon

---

[4] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his impairment and any related symptoms (e.g., pain). See 20 C.F.R. § 416.945(a)(1).

consideration of the entire record. (R. 349.) Based on the objective medical evidence and McLean's testimony, the ALJ determined that McLean retained the RFC to perform sedentary work. (R. 30.) Specifically,

> Mr. McLean can sit for six hours and can lift up to ten pounds maximum. Due to his mental condition he is only able to perform jobs that require no more than simple instructions and simple tasks, with few or infrequent changes in the work, and no decision making as part of the job. He is also limited to jobs requiring no more than occasional interaction with peers, supervisors, and the general public.

(R. 30.)

McLean makes three arguments regarding the ALJ's RFC analysis: (1) the ALJ failed to give the proper weight to McLean's treating physicians; (2) the ALJ failed to give the proper weight to the opinions of the non-examining State Agency physicians; and (3) the ALJ erred by finding McLean to be only partially credible.

### a. Assignment of Weight to Medical Opinions

A treating physician's opinion as to the existence, nature, or severity of a claimant's impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Such an opinion should be given "significantly less weight" when it is not supported by clinical evidence or is not consistent with other evidence of record.

11

<u>Craig</u>, 76 F.3d at 590.  The ALJ has discretion to give less weight to the opinion of a treating physician where there exists persuasive contrary evidence.  <u>Hunter</u>, 993 F.2d at 35.

A treating physician's opinion as to a plaintiff's RFC, however, is not entitled to be given controlling weight or special significance.  Opinions on such issues are not "medical opinions," but rather opinions "reserved to the Commissioner because they are administrative findings that are dispositive of a case." 20 C.F.R. § 404.1527(e).  Current regulations distinguish between an RFC, which only the Commissioner can determine, and a "medical source statement about what the claimant can still do."  <u>See</u> 20 C.F.R. §§ 404.1513(b)(6), 404.1546; Soc. Sec. Ruling 96-5p.  Given that such medical source statements are not technically "medical opinions," by definition they can never be given "controlling" weight.  <u>See</u> Soc. Sec. Ruling 96-5p.  There is "no special significance to the source of an opinion on [such] issues [that are] reserved to the Commissioner . . . ." 20 C.F.R. § 404.1527(e)(3).  As such, the ultimate question of whether a claimant is disabled under the Act is an issue reserved to the Commissioner, and therefore a statement that the claimant is "disabled" or "unable to work" may never be accorded controlling weight or any special significance.  <u>Id</u>.  Nevertheless, since they are medical opinions of a treating physician, such opinions must still be evaluated and may still be entitled to great weight.

Although a statement by a treating physician that the claimant is "disabled" or "unable to work" may never be accorded controlling weight or any special significance,

> opinions from any medical source on issues reserved to the Commissioner must never be ignored. The [ALJ] is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.

Soc. Sec. Ruling 96-5p; see also 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1) (stating that a treating source opinion on the issue of disability is not determinative of disabled status). Once the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight, if any, to which the opinion is entitled:

(1) the length of treatment and frequency of examination;

(2) the nature and extent of the treatment relationship;

(3) the opinion's support by medical evidence;

(4) the opinion's consistency with the record as a whole; and

(5) the treating physician's specialization.

20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5). These factors may not be omitted or disregarded by the ALJ in weighing the value of a treating physician's medical opinion. See Burch v. Apfel, 9 Fed. Appx. 255, 259, 2001 WL 574634 (4th Cir. 2001) (per curiam)

13

(stating that the ALJ "must consider" the factors set forth in 20 C.F.R. § 404.1527(d) when declining to give controlling weight to the opinion of a treating physician); <u>Newton v. Apfel</u>, 209 F.3d 448, 456 (5th Cir. 2000) (electing to join other federal courts in requiring ALJ to consider § 404.1527(d) factors before declining to give weight to treating physician's opinion and noting that the ALJ should consider factors on remand); <u>Winford v. Chater</u>, 917 F. Supp. 398, 401 (E.D. Va. 1996) ("[I]f an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must then consider the weight to be given to the physician's opinion by applying the five factors identified in the regulation . . . ."). In addition, the ALJ must consider any other factors that tend to support or contradict the opinion, but only if brought to his attention.[5] <u>See</u> 20 C.F.R. §§ 404.1527(d)(6), 416.927(d)(6).

### b. The ALJ's RFC Determination and Substantial Evidence

This is a case where there appears to be substantial evidence in the record to support either a finding that McLean is disabled or a finding that he is not disabled within the meaning of the Act. On the one hand, McLean's own testimony, if taken as credible, and the opinions of McLean's treating physician, Dr. Marshall, and psychologist, Dr. Phillips, can support a finding that McLean is

---

[5] For example, the ALJ must consider the medical source's degree of understanding of Social Security disability programs and evidentiary requirements, or the medical source's familiarity with the other information in the claimant's case. 20 C.F.R. §§ 404.1527(d)(6), 416.927(d)(6).

disabled. On the other hand, the other evidence in the record can
support a finding that McLean is not disabled. Given this
conflicting evidence, the ALJ determined that McLean was not
disabled because McLean could perform sedentary work. The Court
here reviews that determination only for substantial evidence.
Hunter, 993 F.2d at 34.

The ALJ's determination that McLean had the RFC to perform
sedentary work is supported by substantial evidence.[6] In support
of that determination, the ALJ took into account the following
evidence.

The ALJ discussed Dr. Achla Kumar's consultative examination
of McLean on January 28, 2003. (R. 304-05.) The consultative exam
was for a Medical Consultant Report for the Virginia Department of
Rehabilitative Services. (R. 197.) McLean related his ailments to
Dr. Kumar, including diabetes, difficulty walking, numbness in his
legs and genitalia, acid reflux disease, hypertension, and off and
on neck pain. (R. 197, 304.) Dr. Kumar's examination produced
mostly normal results, but McLean had reduced sensation to pinprick
in both hands, reduced sensation in the dorsum and volar aspect of
both hands, and subjectively absent sensation to pinprick distal to
both sides of the knee. (R. 198, 305.) Dr. Kumar concluded that

---

[6] The ALJ, in his second decision, specifically incorporated
his discussion, in his first decision, of the objective medical
evidence through March 2004. (R. 27.) Accordingly, the Court has
reviewed the ALJ's first decision as well.

15

McLean "should have no problem sitting, standing, walking, crawling, stooping, bending or lifting, managing stairs, or using his hands for gross and fine dexterity, or overhead activities." (R. 199, 305.)

The ALJ also discussed Dr. Richard J. Shea's psychological examination of McLean on March 5, 2003. (R. 305.) The psychological exam was given so Dr. Shea could issue a Psychology Report for the Virginia Department of Rehabilitative Services. Dr. Shea diagnosed McLean with major depressive disorder, as McLean reported feelings of nervousness, anxiety, anger, being overwhelmed, and being unable to cope. (R. 205, 305.) McLean's cognitive skills were found to be intact but that his emotional problems would interfere with his functioning. (R. 205, 305.) Dr. Shea found that McLean had a GAF score of fifty-five to sixty (R. 205, 305), which indicates moderate symptomology.

McLean argues that the ALJ erred because he did not explicitly assign weight to Dr. Kumar's consultative medical report and Dr. Shea's psychology report. The ALJ, however, is only required to weigh medical opinions when they "are internally inconsistent with each other, or other evidence." Lamb v. Astrue, 2008 WL 4890580, at *4 (E.D. Va. Nov. 12, 2008) (citing 20 C.F.R. § 416.927(c)(2), (d)). Dr. Shea's report found McLean to be depressed but did not opine on McLean's ability to perform work; none of Dr. Shea's findings are contradicted by other evidence. Similarly, Dr. Kumar

16

noted McLean's physical impairments, but did not opine on McLean's ability to perform work; none of Dr. Kumar's findings are contradicted by other evidence. The Court therefore finds no merit to McLean's argument.

The ALJ further considered the findings of the non-examining medical and psychological consultants from the Disability Determination Division pursuant to Social Security Ruling 96-6p and 20 C.F.R. § 404.1527(f) and 20 C.F.R. § 416.927(f). Stonsa Insinna, Ph.D., a medical consultant, found in her mental evaluation that McLean was not significantly limited in most areas of functioning, except that McLean was moderately limited regarding sustained concentration and persistence and interaction with the public. (R. 221-22.) Dr. Insinna's evaluation found that McLean "has the capacity to do simple, substantial gainful activity/activities." (R. 223.) Robert F. Castle, M.D., a medical consultant, found in his physical evaluation that McLean had the capacity to lift and/or carry ten pounds occasionally and less than ten pounds frequently, to stand or walk at least two hours in an eight-hour workday, to sit about six hours in an eight-hour workday, and to push or pull for an unlimited duration. (R. 225.) Dr. Castle's evaluation found that McLean is able to do sedentary work. (R. 230.) David Deaver, Ph.D., a medical consultant, found in his mental evaluation that McLean was moderately limited in a number of capacities, including understanding and memory, sustained

17

concentration and persistence, social interaction, and adaptation. (R. 232-33.) Dr. Deaver's evaluation found that McLean, with treatment, would be able to return to his former level of work. (R. 234.) The ALJ accorded these opinions significant weight because they are generally in accord with the evidence of record. (R. 30.) These opinions are indeed consistent with much of the evidence in the record; therefore, McLean's argument that the ALJ afforded these opinions too much weight because they are inconsistent with the overall evidence is without merit.[7]

The ALJ also thoroughly discussed McLean's depression. The ALJ noted that on February 20, 2003, Dr. Phillips, at Riverpoint Psychiatric Associates, evaluated McLean for depression. McLean complained of fatigue, loss of interest and energy, inability to remember or concentrate, and spells of crying. (R. 282-84, 305.) Dr. Phillips diagnosed McLean with major depression. (R. 282-84, 305.) A year later, in February 2004, Dr. Phillips completed an evaluation, including a mental capacities assessment. (R. 28, 279-81.) Dr. Phillips noted that McLean was unable to work and was markedly limited in a variety of functional areas. (R. 28, 279-

---

[7] In addition, McLean argues that the ALJ did not fully discuss his visits to the emergency room. The ALJ, however, noted McLean's visits to the emergency room on a number of occasions: on September 1, 2001, complaining of nausea and vomiting, he was diagnosed with gastroenteritis (R. 304); on January 24, 2004, complaining of abdominal pain, a CT of the abdomen revealed a small renal cyst (R. 305); and, on February 25, 2005, complaining of left flank pain, he was found to have left flank tenderness and was discharged in "good" condition (R. 27).

81.)  McLean saw Dr. Phillips for a third time on August 2, 2005.
Dr. Phillips did not state any psychological limitations, but did
note certain physical limitations - including McLean's ability to
walk, carry objects and sit for extended periods - albeit without
conducting a physical examination.  (R. 28, 347-50.)  Dr. Phillips
further noted that McLean felt his inability to work was a
principal result of his physical limitations and that he may be
able to return to work if his physical symptoms lessened.  (R. 28,
347-50.)  The ALJ also stated that while Dr. Phillips found McLean
to be significantly depressed, Dr. Phillips noted that there were
two recent deaths in McLean's family.  (R. 28, 347-50.)

        The ALJ found that this evidence - Dr. Kumar's report, Dr.
Shea's report, the non-examining medical and psychological
consultants' reports, McLean's emergency room visits, and Dr.
Phillips' notes regarding McLean's depression - supported a finding
that McLean was not disabled within the meaning of the Act.  The
ALJ noted that McLean's diabetes mellitus and depression were
severe impairments, but that his other alleged ailments were non-
severe because "they did not exist for a continuous period of
twelve months, were responsive to medication, did not require
significant medical treatment, or did not result in any continuous
exertional or non-exertional limitations."  (R. 28.)  The ALJ
found, however, that McLean's severe impairments did not preclude
all work.

In so finding, the ALJ rejected the opinions of Dr. Phillips and Dr. Marshall, McLean's treating physician; the ALJ also found McLean's testimony to be only partially credible.

The ALJ reviewed Dr. Phillips' opinion, see supra, and rejected Dr. Phillips' opinion that McLean could not work for a number of reasons, including:

> Dr. Phillips has apparently seen the claimant on a total of three occasions, February 2003, February 2004 and August 2005, hardly what one would describe as a treating relationship. Additionally, given that lack of treatment or ongoing relationship, Dr. Phillips would by necessity be relying upon the subjective statements of the claimant and "snap-shot" examination finding which could be significantly colored by bereavement or other situational issues. . . . [A]ll of the cited reports of Dr. Phillips were prepared at the request of the claimant's attorney for the purpose of attempting to establish entitlement to benefits.

(R. 28.)  The ALJ's finding that McLean and Dr. Phillips were not in a treating relationship abrogates McLean's argument that the ALJ did not assign a specific weight to Dr. Phillips' opinion.

Furthermore, the ALJ thoroughly reviewed McLean's history with Dr. Marshall. The ALJ noted that Dr. Marshall had treated McLean since March 7, 1995 for peripheral neuropathy, gastroesophageal reflux disease, and hypertension. (R. 306.)  McLean's symptoms were daily pain and fatigue, which required bed rest. (R. 306.) On December 18, 2003, Dr. Marshall stated, in an assessment form for the Department of Public Welfare, that McLean was permanently

20

disabled due to his symptoms.   (R. 250, 305.)   In a functional capacity assessment, and at the behest of McLean's attorney, on March 16, 2004, Dr. Marshall opined that McLean could lift up to five pounds continuously, eleven to twenty pounds frequently, and twenty-one to 100 pounds occasionally; could sit, stand, or walk two hours in an eight hour day; was restricted to repetitive movement for foot and leg controls; was moderately limited in driving automotive equipment; and was mildly limited to exposure to dust, fumes, and gases.   (R. 294-98, 306.)   On June 28, 2005, Dr. Marshall stated this his opinion of December 18, 2003, that McLean was permanently disabled, was unchanged.   (R. 27, 345-46.)

The ALJ found Dr. Marshall's opinion to be unpersuasive and did not accord it significant weight because:

> First, the determination of disability is reserved to the Commissioner of Social Security . . . . Second, the degree of limitation set forth in these reports is inconsistent with the overall record, including Dr, [sic] Marshall's own treatment notes, the claimant's reports of his daily activities . . . , wherein he noted that he shopped, cooked, washed dishes, vacuumed and did the laundry, and the report of Dr. Kumar . . . , an examining physician.

(R. 28.)

First, the ALJ did not err in finding Dr. Marshall's opinion to conflict with the overall record, as set forth supra.

Second, Dr. Marshall's treatment notes do not fully support his opinion that McLean is unable to do any work.   Since the date

21

of McLean's disability, March 28, 2002, McLean apparently saw Dr. Marshall four times. During those visits, McLean complained of his feet being painful and burning once, complained about a swollen penis, complained that he was depressed, and requested medication refills; he did not complain of fatigue or of difficulty walking, standing, or concentrating. (R. 147-49, 283-84.) The ALJ found that these notes did not support Dr. Marshall's conclusion that McLean was permanently disabled, and Court holds there is substantial evidence to support that finding.

Third, the ALJ's finding that McLean's own statements are inconsistent with Dr. Marshall's opinion is based upon substantial evidence. McLean stated in a Daily Activities Questionnaire, distributed by Disability Determination Services, that he sometimes cooks, shops, washes dishes, drives, walks, and vacuums. (R. 93-94.) Other statements in the questionnaire show certain alleged limitations for McLean, including statements that he is fatigued, that he sometimes needs help doing chores, and that he cannot take short walks or go bowling anymore due to pain in his feet, among other things. (R. 93-99.) Nevertheless, these statements do not negate the ALJ's finding that parts of his statements are inconsistent with Dr. Marshall's opinion to the point where that finding is not supported by substantial evidence.

And fourth, Dr. Marshall's opinion conflicts with Dr. Kumar's opinion that McLean was able to work. See supra.

22

Finally, the ALJ found McLean's statements concerning his impairments to be partially credible. (R. 29.) Credibility determinations are reserved to the ALJ. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); see also Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) ("'Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or on the Secretary's designate, the ALJ).'") (quoting Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). The Court's analysis is therefore restricted to determining if the ALJ's decision is supported by substantial evidence and whether the ALJ employed the correct legal standard. See Craig, 76 F.3d at 589.

In evaluating a claimant's statements regarding pain or other symptoms in disability determinations, the ALJ must follow a two-step process: (1) determine whether there is objective medical evidence showing the existence of a medical impairment or impairments which could reasonably be expected to produce the pain or other symptoms alleged; and (2) if there is such evidence, evaluate the intensity and persistence of the claimant's symptoms, including pain, and the extent to which they affect her ability to work. Soc. Sec. Ruling 96-7p. In conducting the second step of the analysis, using all available evidence, the ALJ is required to

23

make a credibility determination as to the claimant's statements regarding the intensity, persistence, or functionally limiting effects of her symptoms whenever the claimant's statements "are not substantiated by the objective medical evidence" and suggest a greater degree of impairment than can be supported by the objective medical evidence alone. Soc. Sec. Ruling 96-7p; see also 20 C.F.R. § 404.1529(c)(4). Where the ALJ makes a negative credibility determination, he must specify the reasons for his decision and the evidence informing it. Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985).

> It is not sufficient to make a conclusory statement that "the [claimant]'s allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the [ALJ] simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the [claimant] and to any subsequent reviewers the weight that the [ALJ] gave to the [claimant]'s statements and the reasons for that weight.

Soc. Sec. Ruling 96-7p.

Here, the ALJ found that there is objective medical evidence that indicates McLean is significantly limited, which supports McLean's statements concerning his impairments. (R. 29.) The ALJ took those credible statements into account when he found that McLean was restricted to sedentary work with certain limitations. (R. 29-30.) What the ALJ did not find credible, in particular, was McLean's assertion that he needs to elevate his legs; the ALJ

24

stated there was no evidence to support that claim and noted that McLean stated he did a "range of cleaning and other daily activities." (R. 29.) On this basis, the Court finds there was substantial evidence for the ALJ to have concluded McLean's testimony was partially credible.

### 3.  Steps Four and Five

The ALJ concluded at step four that McLean could not return to his past relevant work. (R. 30.)  The ALJ then found at step five that McLean's medical condition did not prevent him from finding and performing sedentary work. (R. 30-31.)  The ALJ took into consideration McLean's RFC, age, education, and work experience along with the Medical-Vocational Guidelines of Appendix 2 of the regulations, 20 C.F.R. Subpart P, Regulations No. 4. (R. 30.)  The ALJ took testimony from the independent vocational expert that there are significant numbers of unskilled sedentary jobs that McLean could perform existing in the national and local economies. (R. 30-31.)

### B. Conclusion

The Court FINDS that the ALJ's decision was based upon substantial evidence. In particular, the ALJ throughly reviewed the entire record, properly assigned weight to McLean's treating physician, properly assigned weight to the State Agency physicians, and properly considered and weighed McLean's testimony.

## VI . RECOMMENDATION

For the foregoing reasons, the Court recommends that the final decision of the Commissioner be AFFIRMED, and the case be DISMISSED.

## VII . REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within ten (10) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules.  A party may respond to another party's specific objections within ten (10) days after being served with a copy thereof.  See Fed. R. Civ. P. 72(b).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).



United States Magistrate Judge

Norfolk, Virginia
April 16, 2009

27

## CLERK'S MAILING CERTIFICATE

A copy of the foregoing Report and Recommendation was mailed this date to the following:

Barbara Jean Evans-Yosief
2013 Cunningham Drive
Suite 238
Hampton, VA 23666
COUNSEL FOR PLAINTIFF

Joel Eric Wilson
United States Attorney Office
101 W Main St
Suite 8000
Norfolk, VA 23510
COUNSEL FOR DEFENDANT

Fernando Galindo, Clerk

By: _____

Deputy Clerk

April 17, 2009